# South & North Ala. Railroad Co. v. Gilliam.

### Statutory Action in nature of Ejectment.

1. *Grant of lands by Congress, in aid of railroads; homestead entries allowed after forfeiture.*—The grant of lands to the State of Alabama, to aid in the construction of certain railroads, by the act of Congress approved June 3d, 1856 (11 U. S. Stat. at large, p. 17), expired by its own terms in ten years, and all lands unsold by a railroad company whose road was not then completed reverted to the United States; and although the grant was afterwards revived and renewed by the act of Congress approved April 10th, 1869 (16 *Ib.* 45), the renewal was made subject to all pre-emption rights which had attached in the meantime; and these pre-emption rights and homestead entries, being confirmed by the subsequent act approved April 21st, 1876 (19 *Ib.* 35), must prevail over the claim of the railroad company under the renewed grant.

2. *Conclusiveness of action of executive officers.*—The construction of a statute by the officers specially charged with the duty of executing it, in cases in which their decisions are not conclusive on the courts, ought not to be overruled without cogent reasons.

APPEAL from the Circuit Court of Blount.

Tried before the Hon. JAMES AIKEN.

This action was brought by the appellant, a domestic corporation, against John Gilliam, to recover the possession of a tract of land containing forty acres, which was described as "the north-west quarter of the north-west quarter of section five (5), in township thirteen (13) south, of range one (1) east;" and was commenced on the 5th January, 1882. The defendant pleaded not guilty, and the statute of limitations of ten years; and the cause was tried on issue joined on both of these pleas. The land sued for was included in the

grant of lands to the State of Alabama, to aid in the construction of certain railroads, by the act of Congress approved June 3d, 1856; which grant was revived and renewed by the subsequent act approved April 10th, 1869. These acts of Congress, and the several acts of the General Assembly of Alabama relating to the disposal of the lands, which were read in evidence by the plaintiff, may be found in United States Statutes at large, vol. 11, pp. 17–18; *Ib.* vol. 16, pp. 45–6; Sess. Acts Ala. 1875–6, p. 154; *Ib.* 1876–7, p. 114. The plaintiff offered in evidence, also, a certified copy of the list of "lands set apart to the North and South Alabama Railroad Company, by commissioners appointed under the laws of Alabama," which included the land here sued for. An official certificate of the commissioners, dated the 24th January, 1874, was appended to this document; and to it was affixed the certificate of Governor Houston as to its correctness. This was the plaintiff's title, and the evidence was admitted without objection. The defendant claimed under a homestead entry made by him under the provisions of the act of Congress approved May 20th, 1862, entitled "An act to secure homesteads to actual settlers on the public domain;" and having proved his possession at and before the date of his affidavit claiming a homestead, he offered in evidence a transcript, duly certified, from the records of General Land-Office at Washington, showing the proceedings had in the matter of his claim. The transcript showed that the affidavit claiming an exemption was made on the 23d May, 1867; that his entry was cancelled, June 17th, 1873, "said tract having been approved, May 19th, 1875, to the State of Alabama, for the joint benefit of the South and North Alabama, and the Alabama and Chattanooga Railroad Company, the land lying within the conflicting indemnity limits of said roads;" that his claim was re-opened on his application, verified by affidavit and proof, and was finally decided in his favor, February 12th, 1885, on the ground that "his claim comes within the terms of the 3d section of the act of April 21st, 1876 (19 U. S. Stat. 35)." The plaintiff objected to the admission of this transcript as evidence, and to several parts of it separately, but stated no particular ground of objection; and exceptions were reserved to the overruling of these objections. "Upon this evidence, without more, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence." The plain-

tiff excepted to this charge, and here assigns it as error, with the rulings on evidence.

HAMILL & LUSK, for appellant.

W. F. DICKINSON, *contra.*

SOMERVILLE, J.—The certified copy of the report of the commissioners, and the list of lands attached, offered in evidence by the plaintiff, may be considered as *prima facie* evidence of plaintiff's title to the lands in controversy, as vested by virtue of the acts of the General Assembly of Alabama, approved January 31, 1877, and February 10, 1876, having reference to the division, among other railroads in the State, of the lands granted by Congress to aid in their construction.—Acts 1875–6, p. 154; Acts 1876–77, p. 114. Under the provisions of these statutes, such certified report and list is made to operate as a conveyance to the railroad companies, respectively and severally, of all the rights, title and interest in these lands which the State had derived under the Act of Congress donating them for the uses declared. If the State acquired no title to these lands in controversy, therefore, the plaintiff can claim none.

The defendant claims title under a homestead entry made in due form under the regulations of the United States Land Department, based on a right of pre-emption, with continuous occupancy, which attached as far back as May, 1867. The present action was not commenced until January, 1882.

The lands in controversy fall within the general limits of those granted to the State of Alabama by the Act of Congress approved June 3, 1856, to aid in the construction of certain railroads in the State.—11 U. S. Statutes at large, pp. 17–18. This grant was revived and renewed by Act of Congress approved April 10, 1869, subject to all the conditions and restrictions contained in the former law.—16 U. S. Statute at large, pp. 45–46. One of these conditions was, that "in case it shall appear that the United States have, when the lines or routes of said roads are definitely fixed, *sold* any sections or any parts thereof, granted as aforesaid, or that *the right of pre-emption has attached* to the same, then it shall be lawful for any agent or agents, to be appointed by the Governor of said State, to select, subject to the approval of the Secretary of the Interior, from the lands of the United States nearest to the tiers of sections above

specified," other lands in place of those thus sold or appropriated, which the statute provides shall be held under a like trust, and for similar uses.—11 U. S. Stat. at large, p 17, sec. 1.   This would seem very clearly to reserve from the operation of the grant such lands as the government might elect either to sell, or to appropriate to homestead settlers, provided sale should be made, or the pre-emption right should attach, before the route of the railroads was definitely fixed.   This construction is made clear by the third section of the Act of April 21, 1876, confirming certain pre-emption and homestead entries of public lands within the limits of railroad grants, where such entries have been made under the regulation of the Land Department of the general government.   This section provides, that "all such pre-emption and homestead entries which may have been made by permission of the Land Department, or in pursuance of the rules and instructions thereof, within the limits of any land grant at a time subsequent to the expiration of such grant, shall be deemed valid, and a compliance with the laws, and the making of the proof required, shall entitle the holder of such claim to a patent therefor."—19 U. S. Stat. at large, pp. 35–36.

The grant of June 3, 1856, by its own terms, expired in ten years after its date of approval, if the road otherwise entitled to it should not be completed by that time—all unsold lands reverting to the United States.—11 U. S. Stat. at large, p. 16, sec. 4.   The date of expiration was, therefore, June 3, 1866.   The pre-emption right of the defendant, which was afterwards perfected into a homestead entry, attached in May, 1867, which was subsequent to the expiration of such grant, and, therefore, comes within the terms of the act of April 21, 1876, which declares such entry to be valid.   The renewal of the grant by the act of April 10, 1869, conferred on the grantee a title subject to the burden of all pre-emption rights which had attached between June 3, 1866, and April 10, 1869—or between the expiration and the renewal of the grant.

Under this view of the law, irrespective of any rights of the defendant based on his alleged adverse possession of nearly fifteen years, the Circuit Court did not err, either in admitting the evidence objected to, or in giving the general affirmative charge in favor of the defendant.

The record discloses the fact, that the construction which we have given the statutes under consideration is the same

as that adopted by the officers of the Land Department at Washington, which is entitled to great respect, at least in doubtful cases. "The construction given to a statute by those charged with the duty of executing it, ought not," it has been said, "to be overruled without cogent reasons." *Montgomery Advertiser Co. v. Burke*, 82 Ala. 381.

We have assumed, in the appellant's favor, that the present controversy belongs to that class of cases, in which the decision of the officers of the Land Department is not conclusive, but subject to review on collateral attack in a State court, even in an action of ejectment at law—a point, however, which we do not intend to positively decide.—*Moore v. Robbins*, 96 U. S. 530; *Bohall v. Dilla*, 114 U. S. 47; *Ehrhardt v. Hogaboom*, 115 U. S. 67; *Johnson v. Townsley*, 13 Wall. 72; *Shepley v. Cowan*, 91 U. S. 340.

We discover no error in the record, and the judgment of the Circuit Court is affirmed.